## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| **CHRISTOPHER KELLEHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **25-40071-BEM** |
| | ) | |
| **TOWN OF BROOKFIELD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS
### AND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**MURPHY, J.**

In this action, Plaintiff Christopher Kelleher alleges that the Town of Brookfield ("Brookfield") and several of its officials (the "Individual Defendants," and with Brookfield, "Defendants") engaged in a coordinated campaign to suppress his protected speech and civic participation.[1]  Plaintiff has moved for a preliminary injunction, and Defendants have moved to dismiss.  For the reasons stated herein, the Court will grant the motion to dismiss in part and deny it in part and deny the motion for a preliminary injunction.

---

[1] The Individual Defendants are Sarah Campbell, Maureen Lepak, and Kimberly Simons.  A fourth (non-Brookfield, individual) defendant, Karen Reynolds, was previously dismissed from the case.  Dkt. 49.

# I.    Background

## A.    Factual Background

Except where noted, the following facts are drawn from Plaintiff's amended complaint, Dkt. 29 ("Compl." or "Complaint"), and are accepted as true for purposes of the motion to dismiss.[2]

### 1.    History of the Parties

Plaintiff and the Individual Defendants are Brookfield residents who have held various roles in its local government.[3]  In 2023, while serving on the Brookfield Board of Health with Defendant Lepak, Plaintiff filed an Open Meeting Law complaint alleging that the Board of Health had published insufficient and inaccurate meeting minutes.  Compl. ¶¶ 79–80.  The Massachusetts Attorney General agreed and ordered that the minutes be revised.  *Id.* ¶ 80.  According to Plaintiff, this was the inciting incident for an ongoing course of retaliatory conduct by Lepak against him. *Id.* ¶ 79.  Defendant Simons now serves on the Brookfield Board of Health.  *Id.* ¶ 67.

Defendant Campbell is a member of the Brookfield Select Board and served with Plaintiff on the Brookfield Conservation Commission, from which Plaintiff claims to have been "forced to

---

[2] In deciding a motion for preliminary injunction, the Court "has broad discretion in deciding what evidence to consider." *Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d 25, 31 & n.34 (D. Mass. 2014) (citing *Asseo v. Pan Am. Grain Co.*, 805 F.2d 23, 26 (1st Cir. 1986)).

[3] Plaintiff's Complaint is more than 100 pages long, often repeating itself or presenting information piecemeal and out of order, to some sort of titanic effect.  While the Court appreciates that there is a long history between these parties and that Plaintiff is a pro se litigant and so entitled to a fair amount of leeway, "[e]ven pro se litigants are bound by the Federal Rules of Civil Procedure," *United States v. Scott*, 485 F. Supp. 3d 311, 315 (D. Mass. 2020), including Rule 8's requirement that pleadings be "short" and "plain," with allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a), (e).  Of course, the Court is well aware that attorneys, too, have long and often violated this rule (sometimes at great profit).  *See, e.g.*, *Trump v. New York Times Co.*, — F. Supp. 3d —, 2025 WL 2680597, at *1–2 (M.D. Fla. Sept. 19, 2025) (excoriating experienced counsel for submitting a complaint that was "decidedly improper and impermissible").  However, particularly as artificial intelligence makes the production of language cheaper and faster—undoubtedly a boon to those that have historically been unable to afford garrulous counsel—it will become increasingly incumbent upon courts to insist that parties respect our limited bandwidths, lest we all drown in a sea of slop.  The Court would not make an example out of this case.  However, moving forward, the Court would ask that Plaintiff (or any other prospective filer) do his best to write plainly and precisely, trusting that the Court reads closely and is unmoved by too much rhetoric.

resign." *Id.* ¶¶ 3, 102, 283–87.  Plaintiff alleges that Campbell, too, "disparage[ed] [his] filing of Open Meeting Law complaints, describing them as a 'waste of her time.'"  *Id.* ¶ 55.

### 2.     The Brookfield Board of Health Election and Aftermath

The main narrative of Plaintiff's Complaint begins in April 2025, in the days leading up to the Brookfield Board of Health elections.  *Id.* ¶ 12.  For that election, Plaintiff promoted a write-in campaign (without the individual's approval), to "gauge and publicly demonstrate community support," to "encourage" the individual to accept the position, and to "trigger the statutory process" by which a replacement would be appointed.  *Id.* ¶¶ 12–14, 290.  Seemingly in response, on April 29, 2025, Brookfield published a statement on its website that the individual was not, in fact, a write-in candidate and would not serve if elected.  *Id.* ¶¶ 15–16.  Plaintiff characterizes this statement as "false and misleading" and asserts that it was "timed to coincide with the final days of voting, creating a chilling effect on voter participation."  *Id.* ¶¶ 17–22.

Around this same time, on or about April 23, 2025, Plaintiff served Brookfield and Defendants Lepak and Simons with a "final [Americans with Disabilities Act ("ADA")] notice of lawsuit."  *Id.* ¶ 48.  "The next day, Plaintiff emailed Town officials to withdraw from all public meetings, citing safety concerns after a reported threat involving a FedEx driver and two high ranking [Brookfield] officials."  *Id.* ¶ 49.

The following day, on April 25, 2025, each of the Individual Defendants applied for harassment prevention orders against Plaintiff under Mass. Gen. Laws ch. 258E.  *Id.* ¶¶ 23, 50, 186.  Plaintiff alleges that these applications were "based on Plaintiff's lawful civic and political activities" and "advanced overlapping and coordinated allegations, many of which were factually false, misleading, or unsupported by evidence."  *Id.* ¶¶ 24–28.

"Within days," Plaintiff created and distributed flyers criticizing two of the Individual Defendants, Campbell and Lepak, who had just sought harassment prevention orders against him.

*Id.* ¶¶ 33, 50.  Campbell thereafter sought an emergency harassment prevention order against Plaintiff, which was temporarily granted on an ex parte basis.  *Id.* ¶¶ 37–38, 44.

On May 9, 2025, the East Brookfield District Court held a hearing and granted the requests for harassment prevention orders.  *Id.* ¶ 100.  Prior to that hearing, Defendant Lepak requested and obtained a letter in support of her application from an individual who had made similar harassment allegations against Plaintiff.[4]  *Id.* ¶¶ 108–09.  Plaintiff alleges that this letter "contained numerous false statements of fact," intended to defame him, *id.* ¶¶ 108–28, and that it moreover contained quotes "lifted from [a] confidential ADA accommodation request, dated April 25, 2025, which was sent to Town officials and counsel," which the letter "mischaracterized . . . to portray Plaintiff as unstable and dangerous," *id.* ¶ 125.  Plaintiff further alleges that Defendant Lepak has elsewhere "published multiple false and defamatory statements about Plaintiff" in official communications, in the minutes of public meetings, on social media, and to the public.  *Id.* ¶¶ 156–65.

### 3.    Public Meeting Accommodations

Beginning in August 2024 and throughout 2025, Plaintiff alleges that he made repeated requests for disability-related accommodations to participate fully in Brookfield public meetings. *Id.* ¶ 49.  Plaintiff further alleges that, during the May 9, 2025 hearing on the Individual Defendants' applications for harassment prevention orders, the East Brookfield District Court ordered that Plaintiff be provided remote access to Brookfield public meetings, to prevent the harassment prevention orders' excluding him from public participation.  *Id.* ¶ 234.

Notwithstanding, Plaintiff alleges that his requests have been repeatedly ignored and that his access to public meetings has been curtailed as a result.  *Id.* ¶¶ 50–53.  Among other challenges,

---

[4] The letter's author, Karen Reynolds, was previously a defendant in this suit but has since been dismissed. *See* Dkt. 49.

Plaintiff highlights a new Brookfield policy that ADA accommodation requests for remote access must be made on a meeting-by-meeting basis, 48 hours in advance. *Id.* ¶ 102. In at least one instance, Plaintiff states that a meeting was noticed "exactly 48 hours and 3 minutes in advance," making an ADA request within that policy impracticable. *Id.* ¶ 103. Throughout this time, Plaintiff further alleges that Brookfield has failed to designate a Title II coordinator or adopt an ADA grievance procedure. *Id.* ¶¶ 104–05.

### 4.    <u>Prior Litigation and Administrative Complaints</u>

Plaintiff has already availed himself of several fora to address these and related allegations against Brookfield and its officials. In October 2024, Plaintiff was one of three plaintiffs to file a civil action in the Worcester Superior Court against the Brookfield Conservation Commission, alleging violations of Massachusetts's Open Meeting Law, the Massachusetts Public Accommodations Law, and the Massachusetts Equal Rights Act. Dkt. 40-1 at 13. That lawsuit was dismissed.[5] *Id.*

In November 2024, Plaintiff filed a second action against Brookfield in federal court. *See Christopher Kelleher v. Town of Brookfield*, No. 4:24-cv-40146-MRG, Dkt. 37 (D. Mass. May 30, 2025). That lawsuit was likewise dismissed after the court found that Brookfield "has continued to act in good faith and has made numerous attempts to accommodate Plaintiff" such that his requests for declaratory and injunctive relief were moot.[6] *Id.* at 3–6.

---

[5] The court found that the Open Meeting Law claims were barred because the plaintiffs had already availed themselves of the administrative complaint process, Dkt. 40-1 at 15–17; that the Public Accommodations Law allegations (muting Plaintiff during and before public meetings) did not violate the statute, *id.* at 18; and that the plaintiffs had failed to allege intentional discrimination for their Equal Rights Act claims, *id.* at 18–19.

[6] Despite substantial overlap between the allegations in that lawsuit and the instant suit, "dismissal of [Plaintiff's] claim[s] as moot is, by definition, not a judgment on the merits," *Garavanian v. JetBlue Airways Corp.*, 149 F.4th 95, 100 (1st Cir. 2025), and therefore does not trigger claim preclusion.

Plaintiff has also filed a series of administrative complaints with the Massachusetts Commission Against Discrimination ("MCAD") against various Brookfield entities.[7] Defendants highlight a September 5, 2025 determination wherein MCAD found that Brookfield *did not* violate the Open Meeting Law when it muted Plaintiff during a public meeting. *See* Dkt. 40-3. Alternatively, Plaintiff highlights a November 17, 2025 determination wherein MCAD found that Brookfield *did* violate the Open Meeting Law by failing to engage interactively with Plaintiff's disability-related accommodation requests. *See* Dkt. 47-1.

**B.**    **Procedural Background**

Plaintiff filed this lawsuit in Worcester Superior Court on May 27, 2025. Dkt. 2. On June 3, 2025, Defendants removed to federal court.[8] Dkt. 3.

On August 29, 2025, Plaintiff moved for a preliminary injunction, asking the Court to order the Defendants to:

> 1. Reinstate blanket ADA accommodation requests for known disabilities . . . .
> 2. Adopt and publish [an ADA] grievance procedure . . . .
> 3. Cease preemptive muting, audio cutoffs, and chat disablement that exclude Plaintiff from pre-meeting and in-meeting participation.
> 4. Treat all ADA accommodation requests as confidential disability information . . . .
> 5. Refrain from characterizing Plaintiff's ADA requests, accommodation-related complaints, or use of statutory oversight processes (including the Open Meeting Law complaint process) as "harassment" . . . .
> 6. Prohibit denial of accommodations on the ground they are "more than nondisabled citizens receive" . . . .
> 7. Respond timely to all ADA requests and engage in the required interactive process.

---

[7] A cursory review of published and pending MCAD decisions seems to show that Plaintiff has filed as many as 30 MCAD complaints against various Brookfield entities within the past two years. *See* Mass. Off. of the Att'y Gen., *The Open Meeting Law*, Mass.gov, https://www.mass.gov/the-open-meeting-law (last visited Dec. 18, 2025) (selecting 'Search Open Meeting Law determinations' and performing a 'Full Text Search' for "Christopher Kelleher"). As demonstrated by the two determinations highlighted by the parties, Plaintiff is sometimes vindicated by these MCAD determinations, sometimes not.

[8] Plaintiff moved to remand the action, which the Court denied. Dkts. 13, 24.

Dkt. 30 at 3–4.  On September 8 and 10, 2025, Defendants opposed the motion for preliminary injunction and moved to dismiss the claims against them.  Dkts. 38, 40.  On November 24, 2025, the Court held a hearing and took both motions under advisement.  Dkt. 48.

## II.    Legal Standard

### A.    Motion to Dismiss

At the outset, the Court notes that the memorandum accompanying Defendants' motion to dismiss invokes, for part of its argument, the standard and burden-shifting scheme of Massachusetts's anti-SLAPP statute.[9]  The anti-SLAPP statute provides for a "special motion" that "allows defendants to obtain early dismissal of a lawsuit if they can demonstrate that the claims against them were brought to discourage them from exercising their right to petition the government."  *Blakesley v. Marcus*, 158 F.4th 90, 93 (1st Cir. 2025).  Plaintiff argues that Defendants' attempt to incorporate the anti-SLAPP statute's procedures into their motion to dismiss for failure to state a claim under Federal Rule 12(b)(6) is improper.  Dkt. 42 at 18.

On this technical point, the Court agrees with Plaintiff.  Massachusetts's anti-SLAPP statute is substantive state law, which this Court must apply when sitting in diversity or, as here, when exercising supplemental jurisdiction over state-law claims.  *Godin v. Schencks*, 629 F.3d 79, 85–87 (1st Cir. 2010) (analyzing Maine's anti-SLAPP statute); *Blakesley*, 158 F.4th at 95 (applying Massachusetts's anti-SLAPP statute).  Importantly, that is so because the statute does not attempt to displace Federal Rule 12, which would otherwise result in the anti-SLAPP statute's preemption in federal court.  *See Godin*, 629 F.3d at 85–91.  In *Godin*, the First Circuit characterized Maine's anti-SLAPP statute as an "*additional* mechanism[] . . . to curtail

---

[9] *See* Dkt. 39 at 5–8 (citing Mass. Gen. Laws ch. 231, § 59H).  As discussed further below, a substantial part of the allegations in this case concerns petitioning activity, *i.e.*, the Individual Defendants' filing for (and receiving) harassment prevention orders against Plaintiff.  *See, e.g.*, Dkt. 29 ¶¶ 23–32.

rights-dampening litigation."[10]  *Id.* at 91 (emphasis added).  That allowed for the statute not to conflict with Rule 12, which the court held was "[not] intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims" and so could exist "side by side" with other, non-discordant procedural devices.  *Id.* (quoting *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999)).  Accordingly, a motion to dismiss pursuant to the anti-SLAPP statute is necessarily procedurally distinct from a Rule 12 motion, and Plaintiff is correct to point out Defendants' conflation of the two.[11]

More fundamentally, the Court finds that most of Plaintiff's state-law claims are not susceptible to an anti-SLAPP motion because they constitute "[m]ixed claims, that is, those based on a [defendant's] petitioning along with substantial conduct other than or in addition to the petitioning activities."[12]  *Blakesley*, 158 F.4th at 101 (quoting *Bristol Asphalt, Co. v. Rochester Bituminous Prods., Inc.*, 493 Mass. 539, 554 (2024)).  For that reason, and given the significant factual overlap between the susceptible and non-susceptible claims, the Court will deny Defendants' request, made at the hearing, for leave to file a belated anti-SLAPP motion.[13]

Accordingly, the Court proceeds with the motion under the usual Rule 12(b)(6) standard, whereby it must determine whether Plaintiff's factual allegations—disregarding all "conclusory"

---

[10] Massachusetts's anti-SLAPP statute is "in all relevant respects the same as the Maine anti-SLAPP statute." *Steinmetz v. Coyle & Caron, Inc.*, 2016 WL 4073135, at *3 (D. Mass. July 29, 2016).

[11] Of course, this is not to say that two motions cannot be raised in a single filing. *See, e.g.*, *Kaiser v. Kirchick*, 2021 WL 5964618, at *1, 5 (D. Mass. Dec. 16, 2021) (discussing how to address dual motions to dismiss under the anti-SLAPP statute and on other grounds).  Here, however, Defendants' motion makes no mention of the anti-SLAPP statute.  Dkt. 38.

[12] *See* Dkt. 29 ¶ 132 (as to Counts I and II, alleging both the applications for harassment prevention orders as well as subsequent, non-petitioning conduct); *id.* ¶¶ 141–42 (same, as to Count IV).  Count III, for abuse of process, is likely susceptible to an anti-SLAPP motion, which is to say that it is based exclusively on petitioning activity.  *See id.* ¶¶ 145–53.  Count VI, for civil conspiracy, presents a closer call.  *See id.* ¶¶ 184–98.

[13] An anti-SLAPP motion must be filed within sixty days of service of the complaint or with leave of court. Mass. Gen. Laws ch. 231, § 59H.  The Court would reconsider such leave at summary judgment.

statements—"state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). Because Plaintiff is proceeding pro se, the Court construes his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

### B.  <u>Preliminary Injunction</u>

"[T]he issuance of preliminary injunctive relief is 'an extraordinary and drastic remedy that is never awarded as of right.'" *Howe v. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr. Series 2016-CTT*, 440 F. Supp. 3d 99, 102 (D. Mass. 2020) (quoting *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Together Emps. v. Mass Gen. Brigham Inc.*, 32 F.4th 82, 85 (1st Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Of the four factors, likelihood of success "weighs most heavily" in the analysis. *Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020). "If the movant cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *US Ghost Adventures, LLC v. Miss Lizzie's Coffee LLC*, 121 F.4th 339, 348 (1st Cir. 2024) (internal quotation marks omitted). In determining likelihood of success, "the Court need only consider . . . the claims that support the

requested injunctive relief." *Svenska Ortmedicinska Institutet, AB v. DeSoto*, 164 F. Supp. 2d 27, 31 (D. Me. 2001).

## III.     Discussion

### A.     Motion to Dismiss

#### 1.     Counts I (First Amendment Retaliation), II (Massachusetts Civil Rights Act), III (Abuse of Process), and VI (Civil Conspiracy)

Plaintiff alleges that he engaged in conduct protected by the First Amendment and by Massachusetts law—among other things, political campaigning, petitioning, and participation in civic government—and that the Individual Defendants' actions (including their applications for harassment prevention orders) were intended to penalize Plaintiff for that conduct or were otherwise meant to discourage Plaintiff's further engagement. *See* Compl. ¶¶ 129–53, 184–98.

Defendants argue that their actions were not for any unlawful purpose but rather "to stop [Plaintiff's] harassing and threatening behavior."[14]  Dkt. 39 at 12.  However, on a motion to dismiss, the Court cannot resolve that factual dispute.

As to Count II, the Court has previously concluded that, as a matter of Massachusetts law, successful petitioning cannot constitute "threats, intimidation, or coercion" under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I.[15]  Defendants are therefore entitled

---

[14] Defendants correctly point out that Plaintiff's political postering began *after* the Individual Defendants applied for the harassment prevention orders. *See* Dkt. 39 at 2–3; *see also* Compl. ¶¶ 33, 50.  However, Plaintiff has also alleged protected conduct *prior* to those applications, as well as retaliatory conduct *after* postering. *See* Compl. ¶¶ 131–32, 140–42.

[15] *See* Dkt. 49 (citing *Sahli v. Bull HN Info. Sys., Inc.*, 437 Mass. 696, 698, 704 (2002), wherein the Massachusetts Supreme Judicial Court interpreted identical statutory language ("threats, intimidation, or coercion") to exclude petitioning activity that is "reasonably based [even if] unsuccessful").

to a narrowing of that claim to exclude their successful applications for harassment prevention orders.[16]

Accordingly, the Court will deny the motion to dismiss Counts I, III, and VI and will grant the motion in part as to Count II.

### 2.    Count IV (Defamation)

Plaintiff alleges that Defendant Lepak defamed him by "transmit[ting] false and damaging statements about Plaintiff on Facebook and to multiple Massachusetts regulatory agencies." Compl. ¶¶ 84, 154–65.  Specifically, Plaintiff alleges that Lepak: (1) "in her official capacity" as Chair of the Brookfield Board of Health, made false statements to several Massachusetts agencies regarding Plaintiff's businesses, *id.* ¶¶ 4, 84–88; (2) "republished meeting minutes containing statements that had already been adjudicated false by the Massachusetts Attorney General, *id.* ¶¶ 89–94; and (3) "made stigmatizing and defamatory statements about Plaintiff's mental health status" on social media, *id.* ¶¶ 95–97, 159.

As to the first category, Lepak points out that statements made by public officials while performing their official duties are privileged.  Dkt. 39 at 13 (citing *Dear v. Devaney*, 83 Mass. App. Ct. 285, 293 (2013)).  However, such privilege is conditional and does not apply where the

---

[16] The Court further notes that, along similar lines, federal law might require narrowing some of Plaintiff's allegations, particularly with respect to the harassment prevention orders.  In the First Circuit, it is unsettled whether, in the absence of any anti-SLAPP procedures, First Amendment protections may be applied as a matter of federal law to immunize objectively reasonable—here, successful—petitioning activity.  *See Magnesium Elektron N. Am., Inc. v. Applied Chemistries, Inc.*, 2019 WL 7580061, at *2 n.3 (D. Mass. July 26, 2019).  This question is most relevant to Counts III (abuse of process) and VI (civil conspiracy), which appear to exclusively allege successful petitioning activity and preparations thereto.  *See* Compl. ¶¶ 145–53, 184–98.  However, as the parties have not briefed that issue, the Court will not address it.

official makes a statement "knowing it to be false, or with reckless disregard as to its truth or falsity," *Dear*, 83 Mass. App. Ct. at 290, as Plaintiff alleges to be the case here, Compl. ¶ 164.[17]

As to the second category, the Court finds that Plaintiff has not plausibly pled defamatory statements. According to the Complaint, Plaintiff "filed an Open Meeting Law complaint alleging false [Brookfield] Board [of Health] minutes," which resulted in a determination from the Massachusetts Attorney General that those meetings should be revised. *Id.* ¶ 80. "Rather than comply in good faith," Plaintiff alleges, "Lepak devised a means to reintroduce the false narrative" by "read[ing] the discredited statement aloud during a later public meeting, ensuring it would be incorporated into a new set of minutes" and by "caus[ing] both sets of the false minutes to be posted on a third-party website accessible to the public." *Id.* ¶ 91. However, stripped of their malevolent characterizations, this sequence of events is "merely 'consistent with' unlawful action and is 'just as much in line with' lawful action." *See Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 9 (1st Cir. 2011)). It does not strike the Court as strange that officially revised minutes would include, for completeness's sake, later-excised content or that both sets of records would be made publicly

---

[17] Defendants further raise but do not develop questions about whether "[P]laintiff has standing to bring [defamation] claims on behalf of [his businesses]" and whether "any damages [were] suffered by those businesses." Dkt. 39 at 13. It is unclear why these claims could be brought only "on behalf of" the businesses. *See id.* A statement that a person's "prior businesses had been 'dissolved by court order,'" as Plaintiff alleges, Compl. ¶ 157, is plausibly as much a statement about the proprietor of said business. Further, for a defamation claim, "statements that may prejudice [a] plaintiff's profession or business" do not require proof of economic loss. *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 630 (2003).

available.  In the absence of any allegations to explain why this was improper and not just business as usual, the Court will dismiss that part of the claim.[18]

As to the third category, Defendants argue that Lepak's online statements about Plaintiff's mental health—that he has "severe mental health issues," Compl. ¶ 95—are true and thus cannot be defamatory.  Dkt. 39 at 13 n.11.  On this, the Court agrees with Defendants: Plaintiffs' own pleadings preclude him from arguing that the statements are materially false.  *See* Compl. ¶¶ 163, 227 (alleging that Plaintiff suffers from complex post-traumatic stress disorder "that substantially limits major life activities including verbal expression, memory, and civic engagement under stress," such to qualify him as disabled under the ADA.  And while Massachusetts law "permits a plaintiff in a libel action to recover for a truthful defamatory statement if the plaintiff proves that it was made in writing with actual malice[,] . . . the First Amendment limits the scope of that statute such that 'a statement on matters of public concern must be provable as false before there can be liability under state defamation law.'"  *Heagney v. Wong*, 915 F.3d 805, 814 n.2 (1st Cir. 2019) (quoting *Shaari v. Harvard Student Agencies, Inc.*, 427 Mass. 129, 132 (1998)).  Plaintiff's own pleadings demonstrate that Lepak's statements were meant to color or inform Plaintiff's public acts and to "impugn[] Plaintiff's fitness for public participation and office."  *See, e.g.*, Compl. ¶¶ 95, 159.  As such, "truth is an 'absolute defense'" to this part of the defamation claim.  *See Heagney*, 915 F.3d at 813–14 (quoting *Noonan v. Staples, Inc.*, 556 F.3d 20, 26 (1st Cir. 2009)).

---

[18] It is also less than obvious that the original minutes, even if inaccurate, were defamatory.  The original dispute concerned the inclusion of certain titles in an emergency preparedness plan.  *See* Mass. Off. of the Att'y Gen., *The Open Meeting Law*, Mass.gov, https://www.mass.gov/the-open-meeting-law (last visited Dec. 18, 2025) (reviewing the at-issue determination by selecting 'Search Open Meeting Law determinations' and then searching 'OML 2024-25' in 'Determination Number').  Plaintiff's "concern was not with the titles per se but rather related to his voice being heard and his vote counting where it appeared that the decision regarding the titles had been made in advance."  *Id.* at 2.  The minutes instead recorded that he did not "accept . . . Lepak's explanation for why the emergency preparedness plan included titles," which the Attorney General found inaccurate.  *Id.* at 3.  Fully recognizing Plaintiff's natural desire to be accurately reflected in official records, the Court struggles to see how this delta would "damage [Plaintiff's] reputation in the community."  *See Ravnikar*, 438 Mass. at 629.

Accordingly, the Court will grant in part the motion to dismiss as to Count IV.

      **3.**      **Counts VII, VIII, and IX (ADA and Rehabilitation Act Violations)**

      **a.**      **Confidentiality of Disability-Related Information (Count VII)**

Plaintiff alleges that "one or more Defendants" disclosed to a third-party private citizen an email sent by him to Brookfield officials regarding a request for a disability-based accommodation as part of their efforts to seek harassment prevention orders against him. Compl. ¶¶ 199–216. Plaintiff asserts that this "disclosure of confidential disability-related information" constitutes a "per se" violation of the ADA and Rehabilitation Act. *See id.* ¶ 207.

However, Plaintiff's statutory and regulatory citations do not support his claim. *See id.* The Court has not found any authority for the proposition that a governmental entity (outside the employment context) has a specific duty under the ADA or Rehabilitation Act to maintain a citizen's accommodation request as confidential.[19] *Cf. Stark v. Hartt Transp. Sys., Inc.*, 37 F. Supp. 3d 445, 471 (D. Me. 2014) ("The purpose of the ADA confidentiality provisions is to 'protect disabled *employees*.'" (emphasis added) (quoting *Yoder v. Ingersoll–Rand Co.*, 31 F. Supp. 2d 565, 569 (N.D. Ohio 1997), *aff'd*, 172 F.3d 51 (6th Cir. 1998))).

Accordingly, the Court will grant the motion to dismiss as to Count VII.

      **b.**      **Denial of Access (Counts VIII and IX)**

Plaintiff alleges that Brookfield violated the ADA and Rehabilitation Act by refusing to grant certain accommodation requests and by not engaging in an interactive process to determine what reasonable accommodations could be provided. Compl. ¶¶ 217–32. Specifically, Plaintiff has requested that Brookfield provide him:

---

[19] Defendants argue that any such obligation would be in tension with Massachusetts's Public Records Law. *See* Dkt. 39 at 15–16. *But see* Mass. Gen. Laws ch. 4, § 7(26)(c) (excluding "medical files or information and any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy" from its definition of "[p]ublic records").

A. Continued remote access to public meetings via the same Teams link;

B. Protection against arbitrary muting or targeted speaking-time enforcement;

C. Equal opportunity to participate in public comment without disability-based interruption; and

D. Assurance of compliance with [allegedly] court-ordered accommodation . . .

*Id.* ¶ 221. Plaintiff further alleges that he has been harmed by Brookfield's failure to designate a Title II coordinator or adopt an ADA grievance procedure. *Id.* ¶¶ 104–05.

At the outset, the Court would clarify that the ADA's interactive-process requirement, familiar in the employment context, does not apply to public entities in their provision of services to citizens.[20]  *Compare* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."), *with* 28 C.F.R. § 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.").[21]

Rather, "[a] plaintiff seeking relief under Title II [of the ADA, applicable to public entities] 'must establish: (1) that he is a qualified individual with a disability; (2) that he was excluded from participating in, or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination

---

[20] Even in the employment context, the First Circuit "does not regard an employer's participation in the interactive process as an absolute requirement under the ADA." *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 132 n. 5 (1st Cir. 2014).

[21] In an Open Meeting Law determination, the Massachusetts Attorney General determined that the Brookfield Board of Health violated the Open Meeting Law by failing to engage in an interactive process, citing to the ADA's employment regulation and stating that it "interpret[s] the Open Meeting Law as requiring public bodies to hold meetings that are consistent with the requirements of the ADA." *See* Dkt. 47-1 at 5. The Court expresses no view on the meaning of the Open Meeting Law, which is not at issue in this case and which may incorporate broader protections against public entities than are directly available under the ADA.

was by reason of his disability.'"  *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006)

(quoting *Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000)).

At this stage, Defendants do not dispute that Plaintiff is a qualified individual with a

disability.  However, Defendants argue that Plaintiff "has had online access to public meetings,"

thus no exclusion or denial of benefits, and that he only "takes exception" to being denied the

particular (unreasonable, Defendants argue) accommodations he has requested.  Dkt. 39 at 16–17.

For his part, Plaintiff does allege that, as a "direct result" of Brookfield's actions and inaction, he

"has been excluded from one Annual Town Meeting and at least twenty-one (21) regular public

board or committee meetings within a three-month period."  Compl. ¶ 106.

The Court largely, though not entirely, agrees with Defendants.  A Worcester Superior

Court judge has already held that Plaintiff has no entitlement to being unmuted before or during

public meetings.  Dkt. 40-1 at 18.  It is impossible for Brookfield to exclude Plaintiff from meetings

by not providing something to which he is not entitled.  Likewise, as discussed further below, the

Court lacks jurisdiction to enforce any guarantees (if any) provided by the East Brookfield District

Court.  *See* Section III(A)(6), *infra*.

On the issue of meeting links and on Brookfield's alleged failure to appoint a Title II

coordinator or adopt a grievance procedure, the Court narrowly finds that Plaintiff has pled his

claim.[22]  Moving forward, Plaintiff will have the burden to show, among other things, that

Brookfield's chosen course of action was unreasonable and that it was discriminatory or otherwise

---

[22] In their motion to dismiss, Defendants do not address the Title II coordinator or grievance procedure allegations.  *See* Dkt. 39 at 15–17.  In opposing Plaintiff's motion for a preliminary injunction, Defendants state that "nothing requires [Brookfield] to adopt a grievance procedure related to [Plaintiff's] unreasonable requests" because "[Plaintiff] is not an employee of [Brookfield]."  Dkt. 40 at 6.  To the extent Defendants' argument is that 28 C.F.R. § 35.107(a) (requiring a public entity that employs 50 or more persons to designate at least one employee to coordinate its efforts to comply with Title II) applies only in the employment context, that appears to be incorrect.  *See* 28 C.F.R. § 35.101(a) ("The purpose of this part is to implement subtitle A of title II of the Americans with Disabilities Act . . . which prohibits discrimination on the basis of disability by public entities.").

proximately resulted in his exclusion from public meetings.[23]  However, at this stage, the Court cannot say, as a matter of law, that those elements cannot be met on these allegations.

Accordingly, the Court will grant in part the motion to dismiss as to Counts VIII and IX.

### 4.    Count X (Violation of Court-Ordered Accommodations)

Plaintiff alleges that the East Brookfield District Court "issued a specific directive pursuant to [the harassment prevention statute] requiring that Plaintiff be provided remote access to Brookfield public meetings in order to prevent the harassment prevention orders from unlawfully excluding him from public participation."  Compl. ¶ 234.

The Court admits a bit of skepticism as to whether Plaintiff actually has a proper 'order.' The harassment prevention statute does not appear to contemplate the kind of relief Plaintiff suggests.  *See* Mass. Gen. Laws ch. 258E, § 3(a).  Plaintiff does not attach any writing or transcript, and even his description of the alleged order lacks the kind of specificity usually required to make one enforceable.  *See Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 565 (1997) (stating that, to be enforceable, an injunction must contain a "clear and unequivocal command" (quoting *Nickerson v. Dowd*, 342 Mass. 462, 464 (1961))).  It seems more likely that the district court judge made some sort of (perhaps even strong) suggestion that the Individual Defendants should not take their harassment prevention orders as an invitation to exclude Plaintiff from his local government.  However, that would not necessarily constitute an 'order' as courts use that term.

Nevertheless, even assuming that Plaintiff *does* have a proper order, Defendants are correct that an enforcement action thereof would lie in the East Brookfield District Court, not this one.

---

[23] While the Massachusetts Attorney General did find that Defendants violated the Open Meeting Law in refusing to engage with Plaintiff's accommodation requests, the Attorney General "offer[ed] no opinion as to the reasonableness of [Plaintiff's] particular accommodation requests in light of his particular needs, nor did [the Attorney General] find that any accommodation was required."  Dkt. 47-1 at 5.

*See Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 8 (D. Mass. 2003) ("[I]t is a well-established principle that only the court that issued an order or injunction has subject matter jurisdiction to hold in contempt a violator of that order or injunction." (citing *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998))).

Accordingly, the Court will grant the motion to dismiss as to Count X.

### 5.     Count XI (*Monell* Liability)

Plaintiff attempts to establish direct liability against Brookfield under 8 U.S.C. § 1983 by presenting a history of events that he asserts demonstrate "an official policy and entrenched custom of retaliating against individuals who engaged in protected First Amendment activity" through "public shaming of dissenters, intimidation of whistleblowers, misuse of harassment prevention orders, selective enforcement of meeting rules, and deliberate noncompliance with court orders granting civic access." Compl. ¶¶ 246–341.

However, the varied episodes recounted in Plaintiff's Complaint—featuring different actors and vastly different types of alleged misconduct—fail to demonstrate a single, settled practice that could be considered the "moving force" behind his alleged First Amendment injuries. *See Silva v. Worden*, 130 F.3d 26, 30–31 (1st Cir. 1997). For example, Plaintiff alleges that a former Brookfield official (John Holdcraft) engaged in a "campaign of sexual harassment" against another Brookfield official, leading to the latter's decision to withdraw from public service. Compl. ¶¶ 294–301. Elsewhere in the Complaint, Plaintiff alleges that Holdcraft was, as a "politically connected individual[]," allowed to break rules and abuse citizens and officials "without consequence." *See, e.g.*, *id.* ¶¶ 259–63. While these allegations, if proven true, might support a generalized allegation of dysfunction in Brookfield's local government, it is less than obvious how they demonstrate any particular "custom" leading to Plaintiff's alleged injuries.

Notably, a central element of Plaintiff's narrative is that Brookfield was allegedly "on formal notice" of its constitutional non-compliance no later than 2021, when it settled an unrelated First Amendment claim. *See id.* ¶ 250. But that lawsuit was brought by none other than John Holdcraft, the very person Plaintiff portrays elsewhere in his Complaint as Brookfield's "favored" enforcer against free speech. *Id.* ¶¶ 250, 259. Given that the prior suit also involved facially different conduct by different actors and was settled on undisclosed terms, without any adjudication on the merits, the Court does not find reasonable Plaintiff's suggested inference of an overarching municipal practice of First Amendment retaliation.[24]

The Court has no occasion or desire to discount or dismiss any of the individual experiences Plaintiff has alleged. However, even accepting them as true, there is simply too little throughline to say that these demonstrate the existence of an actionable "custom" that was "so widespread as to have the force of law." *See Silva*, 130 F.3d at 31 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)).

Accordingly, the Court will grant the motion to dismiss as to Count XI.

### 6.    Count XII (Election Interference)

Styling his claim under 8 U.S.C. § 1983, the First and Fourteenth Amendments, the Massachusetts Declaration of Rights, and the Massachusetts Civil Rights Act, Plaintiff alleges that Brookfield unduly influenced the 2025 Brookfield Board of Health election by publishing a statement that an individual for whom Plaintiff campaigned (without the person's approval) was

---

[24] The allegations in the prior lawsuit were that Brookfield's Zoning Board of Appeals selectively enforced its zoning laws against Holdcraft for installing a political message board on his property. *See generally Holdcraft v. Town of Brookfield et al*, 4:17-cv-12049-TSH, Dkt. 29 (D. Mass. Aug. 29, 2019) (amended complaint); *see also Holdcraft*, 4:17-cv-12049-TSH, Dkt. 29 (D. Mass. Apr. 14, 2021) (stipulation of dismissal).

"not a write-in candidate" and "[would] not serve if elected." Compl. at 97–102.[25]  Plaintiff asserts

that this statement was "legally false, as Massachusetts law allows any eligible voter to be elected

via write-in votes" and that it was further "intentional, coordinated, and undertaken for the purpose

of influencing the outcome" of the election. *Id.* ¶¶ 291–97.

Defendants argue that their statements were proper and that, in any event, Plaintiff

"suffered no personal harm or violation to his own civil rights."  Dkt. 39 at 20.  On the latter point,

the Court agrees.  Although Plaintiff may be disappointed by the election's outcome, and might

even reasonably point out some degree of misconduct, his claim is "the kind of generalized

grievance[] brought by [a] concerned citizen[] that [the Supreme Court] ha[s] consistently held [is]

not cognizable in the federal courts."[26]  *ASARCO Inc. v. Kadish*, 490 U.S. 605, 616 (1989) (citing

cases).  "Injuries that are too 'widely shared' or are 'comparable to the common concern for

obedience to law' may fall into the category of generalized grievances about the conduct of

government."[27]  *Lyman v. Baker*, 954 F.3d 351, 361 (1st Cir. 2020) (quoting *Becker v. Fed.*

*Election Comm'n*, 230 F.3d 381, 390 (1st Cir. 2000)).  Accordingly, the Court finds that Plaintiff

lacks Article III standing to bring these claims.

However, this conclusion results in remand, not dismissal.  Although neither party frames

it as such, whether Plaintiff has suffered any personal injury is a question of standing, which is

---

[25] In this part of the Complaint, the numbered paragraphs go partly out of order.  To avoid confusion, the Court refers here to its page numbers.  Elsewhere, the Court will return to using paragraph numbers, as context should suffice.

[26] To be clear, the Court expresses no opinion as to the merits of any claim, by Plaintiff or any other party, arising out of Brookfield's handling of the write-in situation.

[27] Plaintiff refers to the harassment prevention order issued against him by the East Brookfield District Court as a "judicial gag order" that "materially altered the conditions under which voters received information and exercised their franchise."  Compl. ¶ 296.  However, Plaintiff cannot himself allege any informational injury, as he was clearly in position of the at-issue information. *Cf. Bonas v. Town of N. Smithfield*, 265 F.3d 69, 73 n.4 (1st Cir. 2001) (holding that deprivation of right to vote could confer standing on citizens challenging town's election practices).

jurisdictional. *See id.* at 360. And when a federal court determines that it lacks jurisdiction over a claim that has been removed from state court, "the proper course is remand," *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989) (quoting *Langford v. Gates*, 610 F. Supp. 120, 122–23 (C.D. Cal. 1985)).[28]

Accordingly, the Court will remand, *sua sponte*, Count XII to the Worcester Superior Court.

### B.    Motion for Preliminary Injunction

Notwithstanding the survival of several of Plaintiff's claims under the permissive Rule 12 standard, the Court finds that Plaintiff has not shown a likelihood of success on claims that would theoretically lead to his requested injunctive relief. *See Svenska*, 164 F. Supp. 2d at 31 (explaining that likelihood of success is evaluated vis-à-vis the requested injunction). In particular, the Court has found dismissal appropriate as to Plaintiff's ADA and Rehabilitation Act claims with respect to confidentiality, with respect to Plaintiff's being muted before and during public meetings, and with respect to his demand for an interactive accommodations process. *See* Section III(A)(3), *supra*. The Court has further dismissed part of Plaintiff's suit with respect to the Individual Defendants' seeking harassment prevention orders against him and has expressed doubt about the legal viability of the remainder.[29]

Plaintiff's injunctive requests are further, in multiple ways, of a kind disfavored by courts. For example, Plaintiff asks the Court to order Defendants to "[a]dopt and publish a[n ADA]

---

[28] "The Supreme Court has held that federal courts ordinarily must answer jurisdictional questions before tackling the merits of a case." *Manguriu v. Lynch*, 794 F.3d 119, 121 (1st Cir. 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998)). Accordingly, the Court does not reach the abstract question of whether Brookfield's election-related actions were improper. Notably, Defendants point out that "no claim has been advanced by" the was-not write-in candidate. Dkt. 39 at 20. However, the implication is that the claim was brought by an unfit party, not that no claim is at all theoretically conceivable.

[29] *See* notes 15–16 and accompanying text, *supra*.

grievance procedure." Dkt. 30 at 3. This is "not . . . a traditional, prohibitory preliminary injunction, but instead . . . a mandatory preliminary injunction, which requires affirmative action by the non-moving party in advance of trial." *See Braintree Lab'ys, Inc. v. Citigroup Glob. Markets Inc.*, 622 F.3d 36, 40–41 (1st Cir. 2010). "Because a mandatory preliminary injunction alters rather than preserves the status quo, it 'normally should be granted only in those circumstances when the exigencies of the situation demand such relief.'" *Id.* (quoting *Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency*, 649 F.2d 71, 76 n.7 (1st Cir. 1981)). The Court does not find that the absence of a formal grievance procedure presents such exigency. Likewise, Plaintiff asks the Court to order Defendants to "[r]efrain from characterizing Plaintiff's ADA requests, accommodation-related complaints, or use of statutory oversight processes . . . as 'harassment,' and refrain from using or supporting such characterizations in any forum." Dkt. 30 at 4. However, "[t]here is a strong presumption that prior restraints on speech are unconstitutional." *Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018). The Court does not find that this is the kind of extraordinary situation that might warrant that kind of intervention.[30]

Accordingly, the Court will deny the motion for preliminary injunction.

## IV. <u>Conclusion</u>

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part, and the motion for preliminary injunction is DENIED.

As to Count II, Plaintiff's claim is DISMISSED insofar as he alleges that the Individual Defendants violated his civil rights by petitioning for harassment prevention orders. As to

---

[30] Likewise, Plaintiff's request that the Court "require evaluation [of disability requests] under ADA/[Rehabilitation Act] standards," Dkt. 30 at 4, is an "obey-the-law injunction[]" of dubious enforceability. *See Secs. & Exch. Comm'n v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012) ("As the name implies, an obey-the-law injunction does little more than order the defendant to obey the law. We have repeatedly questioned the enforceability of obey-the-law injunctions not only in the context of securities cases but other cases as well.").

Count IV, Plaintiff's claim is DISMISSED insofar as he alleges that Defendant Lepak defamed him through her administration of board meeting minutes. As to Counts VIII and IX, Plaintiff's claims are DISMISSED insofar as he alleges that Defendants failed to engage in an interactive process or that Defendants discriminated or excluded him by muting him during meetings, by not providing pre-meeting access, or by failing to comply with any alleged court order. As to Counts VII, X, and XI, Plaintiff's claims are DISMISSED.

As to Count XII, Plaintiff's claim is hereby REMANDED to the Worcester Superior Court.[31]

**So Ordered.**

                                       /s/ Brian E. Murphy
                                       Brian E. Murphy
Dated:  January 5, 2025               Judge, United States District Court

---

[31] For the benefit of the parties, the Court summarizes its understanding of the remaining claims: Plaintiff alleges that the Individual Plaintiffs retaliated against his protected political and civic activity (Counts I and II), including by seeking harassment prevention orders (Counts III and VI). Plaintiff alleges that Defendant Lepak defamed him by making false statements about his businesses (Count IV). Plaintiff alleges that Brookfield's failure to appoint a Title II coordinator or adopt a grievance procedure, as well as its practice with respect to remote access for disabled citizens, violate the ADA and Rehabilitation Act (Counts VIII and IX).